**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TYMOTHY E. MOYER,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF DELAWARE; DAWN FLOYD, individually; CLAUDIA B. DEBONTE, individually; KATHLEEN JENNINGS, individually; ANGELA RIVERA, individually,<br><br>Defendants. | ) | C.A. No. 26-436-GBW-LDH<br><br>FILED<br><br>AUG 28 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |

**REPORT AND RECOMMENDATION**

Plaintiff Tymothy E. Moyer filed this action pursuant to 42 U.S.C. § 1985(3). (D.I. 2). Plaintiff appears pro se and has been granted leave to proceed *in forma pauperis*. (D.I. 5). The Court now screens the Complaint under 28 U.S.C. § 1915(e)(2)(B).

## I. BACKGROUND

The following facts are taken from Plaintiff's Complaint and accepted as true for purposes of screening under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff Tymothy E. Moyer is an African American resident of Delaware. (D.I. 2 ¶ 34). At all times relevant to the Complaint, Michael Uzu was a doctoral student enrolled at the University of Delaware. (*Id.* ¶ 1). The Defendants are the University of Delaware ("University"); Dawn Floyd, the University's Interim Director of Civil Rights and Title IX Coordinator; Deputy Attorney General Claudia DeBonte; Delaware Attorney General Kathleen Jennings; and Delaware Department of Justice Victim Services Coordinator Angel Rivera. (*Id.* ¶¶ 2–5).

On February 3, 2024, an altercation occurred between Plaintiff and Uzu at Plaintiff's apartment in Wilmington, Delaware. (*Id.* ¶¶ 16–23). Plaintiff alleges that Uzu assaulted him during this incident, causing Plaintiff to sustain severe and permanent physical injuries, including a traumatic brain injury. (*Id.*). Uzu claimed self-defense. (*Id.*).

Following the incident, separate criminal and administrative proceedings were initiated. Criminal charges were filed against Uzu in the Delaware Superior Court, and Defendant DeBonte was assigned to prosecute the matter. (*Id.* ¶ 29). Although the prosecution initially proceeded through an indictment, the Department of Justice later entered a *nolle prosequi*, concluding, as alleged by Plaintiff, that the State could not prove assault beyond a reasonable doubt given Uzu's claim of self-defense. (*Id.*). Plaintiff subsequently filed administrative complaints regarding DeBonte's handling of the prosecution, which placed Attorney General Jennings on notice of the allegations, though no corrective action was taken. (*Id.* ¶¶ 32).

Concurrently, the University independently investigated the incident pursuant to its student disciplinary and Title IX procedures, a process overseen or participated in by Defendant Floyd. (*Id.* ¶¶ 40–45). Following its investigation, the University determined that Uzu had committed domestic violence and said that it was "unlikely" that Plaintiff's injuries "occurred through purely defensive actions . . . ." (*Id.* ¶ 23). The University ultimately issued Uzu a deferred suspension, which Plaintiff characterizes as inadequate. (*Id.* ¶ 35).

During the underlying proceedings, Defendant Rivera served as Plaintiff's victim advocate. (*Id.* ¶ 3). Plaintiff alleges that Rivera falsely advised him that representatives of the University and the Delaware Department of Justice would not communicate concerning the case. (*Id.* ¶¶ 48–50). Plaintiff later obtained documents through the Delaware Freedom of Information Act demonstrating that interagency communications regarding the events had occurred. (*Id.* ¶ 30).

Plaintiff further alleges that both the University and the Delaware Department of Justice failed to provide complete responses to his public records requests to conceal their coordination. (*Id.* ¶ 41).

Finally, Plaintiff alleges that Defendants treated him less favorably than similarly situated victims because of his race. (*Id.* ¶ 2). In support, Plaintiff points to several comparator incidents involving white perpetrators and female victims who allegedly received more favorable institutional responses from both the University and the Department of Justice. (*Id.* ¶ 36–38). Plaintiff contends that certain Defendants' routine communications, conflicting self-defense assessments, records-retention failures, and disparate treatment of comparator matters establish a race-based conspiracy to deprive him of equal protection in violation of 42 U.S.C. § 1985(3). (*Id.* ¶ 1).

## II. LEGAL STANDARD

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds pro se, his pleading is liberally construed and the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies

on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Plaintiff asserts a single claim under 42 U.S.C. § 1985(3), alleging that employees of the University of Delaware and the Delaware Department of Justice conspired to deprive him of the

equal protection of the laws because he is African American. (D.I. 2 ¶ 34). The Complaint fails to state a claim upon which relief may be granted and I recommend that it be dismissed.

Section 1985(3) provides a cause of action against persons who conspire to deprive another of the equal protection of the laws or of equal privileges and immunities under the laws. To state a claim, a plaintiff must allege facts supporting a reasonable inference that the defendants entered into a conspiracy motivated by racial or otherwise class-based, invidiously discriminatory animus, committed an overt act in furtherance of the conspiracy, and thereby deprived the plaintiff of equal protection or another federally protected right. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Farber v. City of Paterson*, 440 F.3d 131, 134–35 (3d Cir. 2006). Section 1985(3) does not itself create substantive rights, so the alleged conspiracy must be directed toward the deprivation of an independently protected federal right. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).

The Complaint does not plausibly allege the existence of the alleged conspiracy. Plaintiff alleges that University and Department of Justice personnel communicated concerning his case; that Rivera represented that the two institutions would not communicate; that they nevertheless did so; that the University and Department of Justice later reached different conclusions concerning Uzu's claim of self-defense; and that the institutions provided allegedly inconsistent responses to Plaintiff's requests for records concerning those communications. (D.I. 2 ¶¶ 24–33, 45–48). These allegations support an inference that communications occurred and that Plaintiff believes those communications were improperly concealed. They do not, however, support a reasonable inference that the communications reflected an agreement to deprive Plaintiff of equal protection.

A § 1985(3) claim requires allegations from which an agreement to accomplish an unlawful objective may reasonably be inferred. Communications among governmental actors, parallel conduct, and conduct equally consistent with independent decision-making do not suffice. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010); *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008); *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009).

Here, the Complaint identifies no communication in which any Defendant discussed Plaintiff's race, agreed to treat him differently because of his race, or otherwise manifested a common discriminatory objective. Nor does Plaintiff identify when the alleged agreement was formed, which defendants entered into it, or what each defendant agreed to do. Instead, the Complaint asks the Court to infer an unlawful agreement from the fact that University and Department of Justice personnel communicated about the same underlying incident and later allegedly reached different conclusions concerning Uzu's culpability. That inference is not reasonable. The University disciplinary proceeding and the criminal prosecution involved different institutions, decision-makers, procedures, and governing standards, making divergent conclusions unsurprising rather than suggestive of an agreement. The fact that the University hearing officer did not find Uzu's self-defense claim plausible while DeBonte later dismissed the criminal charges based on self-defense does not, without more, support an inference that the two institutions had agreed to a discriminatory course of action. Nor does Rivera's allegedly inaccurate statement concerning those communications establish that the communications themselves were undertaken pursuant to an unlawful agreement. Plaintiff's allegations therefore do not cross the line from possible misconduct or institutional disagreement to a plausible conspiracy.

The Complaint also fails to plead facts supporting the required inference of racial animus. Plaintiff alleges that he is African American. (D.I. 2 ¶ 34). He principally relies on several comparator incidents involving white perpetrators and female victims who allegedly received more favorable institutional responses. (*Id.* ¶¶ 34–39, 50–52). But the Complaint does not allege that the comparators were similarly situated in material respects, involved the same decision-makers, presented comparable procedural circumstances or evidentiary records, or were known to the Defendants when they acted in Plaintiff's case. Plaintiff's assertion that race is the "remaining variable" is a conclusion, not a factual allegation from which discriminatory purpose may reasonably be inferred. *See Iqbal*, 556 U.S. at 678.

The Complaint also fails to plausibly allege that the conspiracy deprived Plaintiff of equal protection. Plaintiff correctly disclaims any claim to a constitutional right to the prosecution of another person. (D.I. 2 ¶ 43). That limitation is appropriate because a private citizen generally lacks a judicially cognizable interest in the prosecution or nonprosecution of another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981).

Plaintiff instead alleges that Defendants applied governmental and institutional processes in a racially discriminatory manner. Such a theory can, in appropriate circumstances, support an equal-protection claim. Plaintiff must nevertheless allege facts supporting a reasonable inference that Defendants intentionally discriminated against him because of his membership in a protected class. As discussed above, the Complaint does not plausibly allege discriminatory purpose. Nor does it identify any federal right to a particular prosecutorial decision, University disciplinary sanction, or response to a state public-records request. The Complaint therefore fails to plead the deprivation of an independent federal right cognizable under § 1985(3).

The allegations concerning post-prosecution conduct do not cure these defects. Plaintiff alleges that DeBonte made a false statement to a state legislator concerning the evidentiary basis for the dismissal, that Jennings failed to take corrective action after receiving notice of the statement, and that Defendants participated in administrative obstruction concerning Plaintiff's public-records requests. (D.I. 2 ¶¶ 30–33). Even assuming those allegations are true, they do not supply the missing facts to show that Defendants *agreed* to discriminate against Plaintiff because of his race. At most, the allegations describe disputed prosecutorial judgments, an allegedly false statement concerning those judgments, and dissatisfaction with the government's subsequent handling of Plaintiff's requests for information. Those allegations do not establish a § 1985(3) conspiracy.

For these reasons, the Court recommends dismissal of Plaintiff's § 1985(3) claim pursuant to 1915(e)(2)(B). Because the claim fails on the pleadings, the Court does not reach the immunity questions presented by the Complaint.[1]

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's Complaint (D.I. 2) be DISMISSED WITHOUT PREJUDICE. The Court recommends that Plaintiff be granted leave to amend his complaint within thirty (30) days of the District Court's adoption of this Report and Recommendation. Failure to timely file an amended pleading may result in dismissal of the case.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C),

[1] The Complaint raises the question of whether prosecutorial immunity would bar some or all of of Plaintiff's claim. Absolute prosecutorial immunity is functional and protects prosecutors only for conduct intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). Because the § 1985(3) claim fails independently for lack of a plausibly pleaded agreement and discriminatory animus, however, the Court need not determine which acts, if any, are protected by prosecutorial immunity.

Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(a) & (b)(2); *see also* FED. R. CIV. P. 6(d). Any objections to the Report and Recommendation shall be limited to ten (10) pages. Any response shall be filed within fourteen (14) days thereafter and limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights or the right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99–100 (3d Cir. 2017); *United Steelworkers of America, AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006–08 (3d Cir. 1987); *Bello v. United Pan Am. Fin. Corp.*, C.A. No. 24-2052, 2025 WL 275109, at *3 n.5 (3d Cir. Jan. 23, 2025). Parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the Court's website, https://www.ded.uscourts.gov.

Date: August 28, 2026

United States Magistrate Judge